IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REBECCA OWEN,<br><br>   Plaintiff,<br><br>   v.<br><br>STATE OF UTAH LEGISLATIVE SERVICES, et al.,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>2:25-cv-00485-RJS-CMR<br><br>District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Cecilia M. Romero |

This case arises out of Defendant State of Utah Legislative Services (LS) terminating Plaintiff Rebecca Owen's employment. Before the court is Defendants' Motion to Dismiss.[1] On February 26, 2026, the court granted the Motion in part and reserved ruling in part.[2] This Order resolves the remainder of the Motion. For the reasons explained below, the Motion is GRANTED in full.

## FACTUAL BACKGROUND[3]

From early 2020 to December 2023, Owen worked as a Deputy Human Resources Director for LS.[4] Her direct supervisor was Defendant Debbie Cragun.[5] Throughout her

---

[1] Dkt. 21, *Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Upon Which Relief May Be Granted* (*Motion*).

[2] Dkt. 40, *Minute Entry*.

[3] The following facts are drawn from the Complaint. *See* Dkt. 1, *Complaint.* In reviewing a motion to dismiss, the court accepts all well-pleaded facts as true and views them in the light most favorable to the plaintiff. *See, e.g.*, *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

[4] *Complaint* ¶ 13. At all relevant times, the scope of Owen's responsibility was equivalent to a Deputy Human Resources Director: her initial position was Senior Human Resources Generalist, and in July 2023, her job title changed to Senior Human Resources Consultant. *Id.*

[5] *Id.* ¶ 14.

employment, Owen received uniformly positive feedback regarding her job performance, diligence, professional effectiveness, and the breadth and depth of her expertise.[6]

Owen has been diagnosed with attention deficit hyperactivity disorder (ADHD).[7]  In early 2022, Owen disclosed to Cragun that there was a national shortage of her ADHD medications, and Owen was unable to fill her prescription.[8]  Thereafter, Cragun began treating Owen differently.[9]

In May 2022, Cragun scheduled a meeting with Owen to discuss her job performance.[10] Most of the feedback was exceptionally positive, except for a few complaints directly related to Owen's ADHD.[11]  The complaints were inconsequential to the quality and comprehensiveness of Owen's work.[12]  Cragun refused to accept the explanations that Owen proffered during the meeting.[13]  Nonetheless, a few weeks later, Owen received a written annual performance review from Cragun that was not overly negative.[14]  Shortly thereafter, Owen received the maximum merit-based salary increase available.[15]

Over the next 12 months, Cragun sought out opportunities to criticize Owen for traits related to her disability, such as time management, general organizational skills, attention to

---

[6] *Id.* ¶ 15.

[7] *Id.* ¶¶ 16, 18.

[8] *Id.* ¶ 18.

[9] *Id.* ¶ 19.

[10] *Id.* ¶ 20.

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* ¶ 21 (alleging the performance review was "not at all reflective of Plaintiff's ongoing and consistent high-caliber job-performance" but was also "not overly negative").

[15] *Id.*

detail, and brevity in oral and written communication.[16]  Cragun's private criticism was accusatory, overly critical, and aggressive.[17]  And when Cragun criticized Owen in front of her coworkers, it was delivered as a joke at Owen's expense.[18]

During Owen's job performance meeting in May 2023, Cragun raised many of the same complaints that were discussed during the May 2022 meeting.[19]  Owen reminded Cragun of her ADHD diagnosis and her inability to take her prescribed medication due to the national shortage.[20]  Owen explained the medication shortage was the reason certain personal traits were becoming more noticeable and emphasized that those traits only related to the manner of her work, not the quality.[21]

In June 2023, Owen met with Defendant ADA Coordinator Lee A. Killian to discuss her intention to submit a reasonable accommodation request and seek clarification on the essential functions of her job.[22]  Owen told Killian that if time management, communication style, or attention to minute detail were essential functions of her job, Owen intended to seek specific examples of and training for these skills as a reasonable accommodation; and if these were not essential functions, she intended to request that Cragun stop criticizing and harassing her about these skills as a reasonable accommodation.[23]  Killian appeared to not understand her responsibility as ADA Coordinator to assist Owen in clarifying the essential functions of her

---

[16] *Id.* ¶ 22.

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶ 25; *see also id.* ¶ 20.

[20] *Id.* ¶ 25.

[21] *Id.*

[22] *Id.* ¶¶ 31, 33, 35.

[23] *Id.* ¶ 36.

job.[24]  The meeting became awkward, and Owen ended it by telling Killian that she would seek her medical provider's input on the matter at an upcoming appointment.[25]  Ultimately, Owen never submitted a request for accommodation.[26]

During Owen's annual performance review in June 2023, Cragun was hostile, demeaning, and humiliating.[27]  The review did not accurately reflect Owen's superior job performance.[28]  Between July and December 2023, Cragun systematically removed Owen's job responsibilities and reassigned them to younger, less qualified staff members.[29]

On November 13, 2023, another LS manager (DF) notified Owen that one of DF's subordinates (JM) had submitted a reasonable accommodation request.[30]  Over the next ten days, Owen conducted a reasonable accommodation process with JM.[31]  Owen determined a 6-week accommodation allowing JM to work remotely part-time was reasonable and appropriate.[32]  JM was relieved and grateful for this accommodation.[33]

---

[24] *Id.* ¶ 37.

[25] *Id.*

[26] *See id.* ¶ 40.

[27] *Id.* ¶ 28.

[28] *Id.* ¶ 30.

[29] *Id.* ¶ 41.

[30] *Id.* ¶ 42.

[31] *Id.* ¶ 45.

[32] *Id.*  Specifically, JM would work onsite three days each workweek and offsite the other two days, beginning December 4, 2023, and concluding just before the 2024 legislative session began.  *Id.*

[33] *Id.*

On December 1, 2023, Owen requested a meeting with DF to discuss JM's accommodation.[34]  DF declined the meeting and informed Owen he was displeased that she had discussed the accommodation with JM prior to receiving DF's approval.[35]

On December 4, 2023, Owen attended a meeting with Cragun and Killian to discuss the sequence of events related to JM's request.[36]  Owen detailed the steps she had taken, and Cragun and Killian did not express any disagreement or concern.[37]  Later that day, Cragun, Killian, and Owen met with DF.[38]  DF vehemently opposed giving JM any accommodation, and, to Owen's surprise, Cragun and Killian agreed.[39]

On December 14, 2023, Owen received a request from Cragun to meet with HR the next morning.[40]  Cragun also invited Killian; Defendant John Q. Cannon, the Director of the Office of Legislative Research & General Counsel (OLRGC); and Defendant Victoria Ashby, the Legislative General Counsel of OLRGC, to attend.[41]  Based on the invitation list, Owen concluded the meeting was to terminate her employment.[42]  Owen responded that she assumed the purpose was to terminate her employment and asked for a time to return property to LS and retrieve her belongings from the office.[43]

---

[34] *Id.* ¶ 46.

[35] *Id.*

[36] *Id.* ¶ 47.

[37] *Id.*

[38] *Id.* ¶ 48.

[39] *Id.*

[40] *Id.* ¶ 49.

[41] *Id.*

[42] *Id.*

[43] *Id.*

On December 16, 2023, Cragun confirmed the termination was effective December 15, 2023.[44]  Cragun explained the termination was due to Owen's failure to follow internal ADA policy in the JM matter.[45]  While Owen was unaware of such policy, she believes she was fully compliant and the stated reason was pretextual.[46]

## PROCEDURAL HISTORY

On June 18, 2025, Owen filed the Complaint against LS, the Legislative Staff Management Committee (LSMC),[47] and the following individuals: Cragun, Killian, Cannon, Ashby (collectively, the Individual Defendants).[48]  The Complaint asserts five claims: (1) workplace discrimination, harassment and hostile work environment under the American with Disabilities Act (ADA); (2) failure to accommodate in violation of the ADA and the Utah Antidiscrimination Act; (3) retaliation based on disability in violation of the ADA; (4) workplace discrimination based on age in violation of the Age Discrimination in Employment Act (ADEA); and (5) failure to pay wages in violation of the Utah's Payment of Wages Act.[49]

On July 30, 2025, Defendants filed the Motion seeking dismissal for lack of jurisdiction and failure to state a claim.[50]  In their Reply brief, Defendants argued for the first time that Owen

---

[44] *Id.* ¶ 50.

[45] *Id.* ¶ 51.

[46] *Id.* ¶¶ 51–52.

[47] This entity is in fact the Legislative Services Management Counsel, but Owen mistakenly named the entity in the Complaint when she was proceeding pro se.  *See* Dkt. 42, *Plaintiff's Supplemental Briefing in Opposition to Defendants' Motion to Dismiss* (*Plaintiff's LSMC Brief*) at 3; Dkt. 42-2, *Affidavit of Rebecca Owen in Support of Plaintiff's Supplemental Briefing in Opposition to Defendants' Motion to Dismiss* (*Owen Declaration*) ¶¶ 3–4. Because the parties agree on the entity at issue, Defendants did not raise the issue, and this Order dismisses the Complaint in full, the court proceeds by identifying the entity as LSMC.  If any amended complaint is filed, the error may be corrected at that time.

[48] *Complaint* at 1.

[49] *Id.* ¶¶ 62–98.

[50] *Motion.*

lacks standing to obtain prospective relief.[51]   Based on this new argument, the court ordered

supplemental briefing to address standing.[52]   Both parties submitted supplemental briefs.[53]

On February 26, 2026, after the benefit of oral argument, the court issued an oral ruling

granting the Motion in part: (1) the ADA and ADEA claims against LS were dismissed with

prejudice; (2) the ADA and ADEA claims against the Individual Defendants sued in their

individual capacity were dismissed with prejudice; and (3) the ADA and ADEA claims against

the Individual Defendants sued in their official capacity were dismissed without prejudice.[54]   The

court reserved ruling with respect to the claims against LSMC and the state law claims against all

Defendants and ordered supplemental briefing addressing whether sovereign immunity applies to

LSMC.[55]   On March 13, 2026, Defendants filed their supplemental brief, and on March 27,

2026, Owen filed her supplemental response brief.[56]

## LEGAL STANDARD

This court lacks subject matter jurisdiction if the defendants are immune under the

Eleventh Amendment.[57]   A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack

of jurisdiction may be a facial attack, where the court questions the sufficiency of the allegations

in the complaint, or a factual attack, where the court considers facts outside the complaint upon

---

[51] Dkt. 32, *Defendants' Reply Memorandum in Support of Motion to Dismiss* (*Reply*) at 4–5.

[52] Dkt. 34, *Docket Text Order*.

[53] Dkt. 35, *Plaintiff's Supplemental Briefing* (*Plaintiff's Standing Brief*); Dkt. 36, *Defendants' Reply and Memorandum in Support of Motion to Dismiss* (*Defendants' Standing Brief*).

[54] *Minute Entry.*

[55] *Id.*

[56] Dkt. 41, *Defendants' Supplemental Briefing in Support of Motion to Dismiss* (*Defendants' LSMC Brief*); *Plaintiff's LSMC Brief.*

[57] *See Good v. Dep't of Educ.*, 121 F.4th 772, 788–89 (10th Cir. 2024).

which the court's jurisdiction depends.[58]  In resolving a factual attack the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."[59]  Here, Defendants bring a factual attack, and the court will consider the evidence attached to the briefs to determine whether LSMC is entitled to sovereign immunity.[60]  Defendants bear the burden of showing they are entitled to sovereign immunity.[61]

## ANALYSIS

Remaining before the court is the Motion to dismiss the claims against LSMC and the state law claims against all Defendants.[62]  The court considers each in turn.

### I.        LSMC Is an Arm of the State and Entitled to Sovereign Immunity.

*A.  Sovereign Immunity Under the Eleventh Amendment*

"The Eleventh Amendment constitutionalizes the doctrine of state sovereign immunity."[63]  The immunity "operates as a jurisdictional bar that precludes unconsented suits in federal court against a state"[64] and extends to state agencies and arms of the state.[65]  But it does

---

[58] *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302–03 (10th Cir. 2001); *see also Ingram v. Faruque*, 728 F.3d 1239, 1242 (10th Cir. 2013) ("Where the party challenging subject-matter jurisdiction mounts a facial attack, 'the district court must accept the allegations in the complaint as true.'  But if the challenging party brings a factual attack by 'going beyond allegations contained in the complaint and challenging the facts upon which subject matter jurisdiction is based the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" (citation modified) (quoting *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001))).

[59] *St. Stephen's Indian High Sch.*, 264 F.3d at 1303.

[60] *See Motion*; *see also Defendants' LSMC Brief*; Dkt. 41-1, *Exhibit 1* (*LSMC Formation Letter*); Dkt. 41-2, *Exhibit 2, Legislative Management Committee Policies* (*LMC Policies*); Dkt. 41-3, *Exhibit 3, Declaration of John Cannon* (*Cannon Declaration*); Dkt. 41-4, *Exhibit 4, General Liability Coverage Agreement*; *Plaintiff's LSMC Brief*; Dkt. 42-1, *Legislative Management Committee Minutes* (*LMC Minutes*); *Owen Declaration*.

[61] *Hennessey v. Univ. of Kan. Hosp. Auth.*, 53 F.4th 516, 530–31 (10th Cir. 2022).

[62] *See Motion*; *Minute Entry*.

[63] *Free Speech Coal., Inc. v. Anderson*, 119 F.4th 732, 735–36 (10th Cir. 2024) (internal quotation omitted).

[64] *Good*, 121 F.4th at 788–89 (internal quotation marks and citation omitted).

[65] *Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 910–11 (10th Cir. 2008); *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007); *see also Arm of the State*, *Black's Law Dictionary* (12th ed. 2024) ("An entity created by a state and operating as an alter ego or instrumentality of the state.").

not extend to state subdivisions, such as counties, municipalities, and other local government entities.[66] The court considers the *Steadfast* factors when determining whether an entity is an arm of the state: "(a) legal character, (b) administrative autonomy, (c) financial independence; and (d) structure and goals."[67] "If all of these factors point in the same direction, that is the end of the analysis."[68] If the *Steadfast* factors are in conflict, the court then "considers the 'twin reasons' underlying the Eleventh Amendment—avoiding an affront to the dignity of the state and the impact of a judgment on the state treasury."[69]

### B.  Steadfast *Factor One: Legal Character*

Under the first factor, the court "assess[es] the character ascribed to the entity under state law," which involves "conduct[ing] a formulistic survey of state law to ascertain whether the entity is identified as an agency of the state."[70] The court should consider "state statutes, regulations, court decisions, and constitutional provisions."[71]

LSMC is "a 6-member committee formed to oversee and manage all operations of the nonpartisan staff which supports the legislative branch of Utah State Government."[72] LSMC's oversight body is the Legislative Management Committee (LMC).[73] Created by statute, the LMC is a "permanent committee" of the Utah Legislature consisting of sixteen elected representatives.[74] LSMC was created to "manage and prioritize shared legislative services,"

---

[66] *Steadfast Ins.*, 507 F.3d at 1253.

[67] *Good*, 121 F.4th at 790–91; *see also Steadfast Ins.*, 507 F.3d at 1253.

[68] *Good*, 121 F.4th at 792.

[69] *Id.* (citation modified).

[70] *Id.* (quoting *Hennessey*, 53 F.4th at 528).

[71] *Id.*

[72] *Complaint* ¶ 7.

[73] *Cannon Declaration* ¶ 4.

[74] *Id.*; Utah Code § 36-12-6.

such as human resources, across the state Legislature.[75]  Thereafter, LMC's operating policies codified the LSMC.[76]   The policies define the LSMC as "an administrative staff committee of the Legislature."[77]

Owen argues this factor weighs against finding LSMC as an arm of the state because LSMC itself was not created by statute, only its oversight body.[78]  The court disagrees.  While it would be stronger evidence if LSMC itself was created by statute, this factor still weighs in favor of finding LSMC is an arm of the state.  LSMC is an administrative committee of the State Legislation that reports to a permanent committee created by state statute.  The legal character of the LSMC weighs in favor of finding it is an arm of the state.

### C.  Steadfast *Factor Two: Administrative Autonomy*

Under the second factor, the court "consider[s] the autonomy accorded the entity under state law," which "hinges upon the degree of control the state exercises over the entity."[79]  The court may consider

> (i) the control of the entity by the governor and the legislature; (ii) whether the entity's employees are classified as state employees; (iii) whether the entity has ownership or control of property; (iv) whether the entity has the ability to form its own contracts with government entities and commercial enterprises; (v) whether the entity has the ability to set its own policies without state oversight; and (vi) whether the entity has the ability to bring suit on its own behalf.[80]

---

[75] *LSMC Formation Letter* at 2.

[76] *See LMC Policies* at 7–9.

[77] *Id.* § D-301.

[78] *Plaintiff's LSMC Brief* at 4–5.

[79] *Good*, 121 F.4th at 792 (quoting *Hennessey*, 53 F.4th at 528).

[80] *Id.* at 802.

But the Tenth Circuit has instructed that this court should "take care not to become caught up in the minutiae" of these considerations.[81]  Rather, the district court should focus on determining "whether, in light of the entire relationship between the entity and the state, the entity retains substantial autonomy or if it operates with guidance or interference from the state."[82]

Here, the state of Utah exercises control over LSMC.  For example, LSMC reports to, and is controlled by, a permanent committee of the state legislature.  It is comprised of state legislative employees, including the Senate's chief of staff, the legislative auditor general, the legislative general counsel, the House of Representative's chief of staff, the legislative fiscal analyst, and the director of the OLRGC.[83]  It does not own or control any property.[84]  While it might have the ability to contract, the director of the OLRGC  is "not aware of any instance when LSMC has personally entered into a contract with another entity."[85]  Since LSMC does not have a discretionary budget, entering a contract would require seeking an appropriation from the Legislature or reaching an agreement with another legislative office to pay for any contracted services.[86]  Further, LSMC's policies are overseen, directed, and approved by the LMC, which is comprised of elected state representatives.[87]  LSMC cannot bring suit without the LMC's approval.[88]

---

[81] *Id.* (internal quotation marks and citation omitted).

[82] *Id.* (citation modified).

[83] *LMC Policies* § D-302; *Cannon Declaration* ¶ 5.

[84] *Cannon Declaration* ¶ 6.

[85] *Id.* ¶¶ 3, 7.

[86] *Id.* ¶¶ 8–9.

[87] *LMC Policies* §§ D-101 to -305; Utah Code Ann. § 36-12-6.

[88] *LMC Policies* § G-201(3)(a).

Owen attempts to counter these facts with the public minutes of LMC's meetings since 2020.[89]  Owen asserts that during the twenty-five LMC meetings since 2020, LSMC was mentioned once and that reference was in connection to the attendance of the chair of LMC.[90]  Owen argues this is evidence that LMC's control of LSMC is theoretical.[91]  The court disagrees.  While the minimal reference in the meeting notes provides insight into how the LMC exercises its oversight of LSMC, it does not negate the evidence that LMC indeed has oversight power over LSMC.[92]  A full review of the record shows LSMC is not autonomous from the state, but rather fully controlled by a committee of the Utah Legislature.  Accordingly, the second *Steadfast* factor weighs in favor of finding LSMC an arm of the state.

### D.  Steadfast *Factor Three: Financial Independence*

For the third factor, the court considers "the entity's finances" by "look[ing] to the amount of state funding the entity receives and consider[ing] whether the entity has the ability to issue bonds or levy taxes on its own behalf."[93]  An entity that cannot levy taxes and receives most of its funding from the state is likely an arm of the state.[94]  The court should also consider "whether the state bears legal liability for the entity's debts."[95]

---

[89] *Plaintiff's LSMC Brief* at  5–6; *LMC Minutes.*

[90] *Plaintiff's LSMC Brief* at 5–6.

[91] *Id.* at 6.

[92] Owen attaches only the minutes from the December 9, 2024 LMC Meeting when the LSMC is mentioned.  *Id.*  The record does not include the other twenty-four meeting minutes where LSMC is not mentioned.  Even assuming the accuracy of Owen's representations, her argument does not overcome the other evidence in the record.

[93] *Good*, 121 F.4th at 792 (quotation and citation omitted).

[94] *Id.* at 809 (quoting *Hennessey*, 53 F.4th at 533).

[95] *Id.*; *see also Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994) (noting that to assess an entity's financial independence, the court should ask "[i]f the expenditures of the enterprise exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?").

LSMC is financially dependent on the state.  LSMC does not independently receive or expend funds.[96]  Its members receive their salary from the state through "legislative appropriations made directly to the respective legislative offices of LSMC's members."[97]  LSMC cannot issue bonds or levy taxes on its own behalf.[98]  LSMC is also a covered entity under the General Liability Coverage Agreement of the Utah State Risk Management Fund, such that any judgment against LSMC would be paid by the state.[99]

Owen argues the court should not rely on the General Liability Coverage Agreement to support the third factor because the Risk Management Fund "extends coverage broadly as an administrative matter; it is a risk management mechanism, not a constitutional determination. Courts have consistently held that state indemnification and insurance arrangements, standing alone, do not transform a locally or informally created entity into an arm of the state."[100]  But here, the insurance policy does not stand alone.  It is one piece of evidence that weighs slightly in favor of finding LSMC an arm of the state.  However, combined with LSMC's lack of independent funding and the source of its members' salaries, the third *Steadfast* factor weighs in favor of finding LSMC an arm of the state.

### E.  Steadfast *Factor Four: Structure and Goals*

For the fourth factor, the court considers whether LSMC "is concerned primarily with local or state affairs" by "examin[ing] the [LSMC]'s function, composition, and purpose."[101]  As an administrative staff committee of the state legislature, LSMC is primarily concerned with

---

[96] *Cannon Declaration* ¶ 10.

[97] *Id.* ¶¶ 11–12.

[98] *Id.* ¶ 13.

[99] *Id.* ¶ 14; *see also General Liability Coverage Agreement.*

[100] *Plaintiff's LSMC Brief* at 6–7 (citing *Hess*, 513 U.S. 30).

[101] *Good*, 121 F.4th at 792 (quoting *Hennessey*, 53 F.4th at 528).

13

state affairs. It is composed of state officials and its duties involve state matters. For example, LSMC is tasked with, among others, the following duties: "facilitate the coordination of services provided by the [state] legislative units to enhance efficiency and avoid conflicts between legislative units," "review and approve the [state] legislative services budget," and "adopt branchwide policies affecting legislative employees."[102]

Owen "does not dispute that the Legislature is a statewide institution," but argues the function of LSMC is focused locally in Salt Lake City, since it provides "administrative support functions" to staff who are required to work in Salt Lake City.[103] Owen does not cite any case where a court concluded an administrative service to a statewide institution is concerned with local affairs because its office is located in a single city. As Owen acknowledges, factor four focuses on the nature of the entity's mission—not its physical location.[104] And as an administrative arm of the statewide Legislature, the court is persuaded that this factor also weighs in favor of LSMC being an arm of the state.

Since all four *Steadfast* factors point in the same direction, the analysis ends here: LSMC is an arm of the state and thus entitled to sovereign immunity.[105] Because LSMC is immune, this court lacks subject matter jurisdiction.[106] Accordingly, the ADA and ADEA claims against LSMC must be dismissed.

---

[102] *LMC Policies* § D-304(1).

[103] *Plaintiff's LSMC Brief* at 7.

[104] *Id.*

[105] *See Good*, 121 F.4th at 792.

[106] *LaFavre v. Kansas ex rel. Stovall*, 6 Fed. App'x 799, 802 (10th Cir. 2001) ("Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." (citation modified)).

II.    **The Court Declines to Exercise Supplemental Jurisdiction Over the State Law Claims.**

Also pending before the court are Owen's claims arising under Utah state law.[107]  This court has supplemental subject matter jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[108]  The court has discretion to "decline to exercise jurisdiction" when it has "dismissed all claims over which it has original jurisdiction."[109]  "[W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity."[110]  The Tenth Circuit has further instructed, "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[111]

This Order dismisses all claims that arise under federal question jurisdiction.  Further, this case is in its infancy, and all Defendants are state actors.  Declining to exercise jurisdiction is prudent here.  Accordingly, the court declines to exercise supplemental jurisdiction over the state law claims.  The state law claims are DISMISSED for lack of jurisdiction.

---

[107] Two causes of action arise under Utah state law: failure to accommodate in violation of the Utah Anti-Discrimination Act and failure to pay wages in violation of Utah's Payment of Wage's Act.  *Complaint* ¶¶ 70–77, 94–98.

[108] 28 U.S.C. § 1367(a).

[109] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting 28 U.S.C. § 1367(c)); *see also Est. of Harshman v. Jackson Hole Mountain Resort Corp.*, 39 F.3d 1161, 1165 (10th Cir. 2004).

[110] *City of Chicago*, 522 U.S. at 173 (internal quotation marks and citation omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining that courts deciding whether to decline jurisdiction should consider "judicial economy, convenience and fairness to litigants").

[111] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998)); *see also Muller v. Culbertson*, 408 Fed. App'x 194, 197 (10th Cir. 2011) (unpublished) (finding a district court did not abuse its discretion "because under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction" (citation modified)); *Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**CONCLUSION**

For the reasons explained in the February 26, 2026 oral ruling and those stated above, the Motion[112] is GRANTED:

- The ADA and ADEA against State of Utah Legislative Services are DISMISSED WITH PREJUDICE;

- The ADA and ADEA claims against the Individual Defendants sued in their individual capacity are DISMISSED WITH PREJUDICE;

- The ADA and ADEA claims against the Individual Defendants sued in their official capacity are DISMISSED WITHOUT PREJUDICE;

- The ADA and ADEA claims against LSMC are DISMISSED WITH PREJUDICE; and

- The Utah state law claims against all Defendants are DISMISSED WITHOUT PREJUDICE.

Owen requested an opportunity to amend the Complaint.[113]  A party seeking to amend a pleading must file a motion for leave to amend pursuant to Local Rule 15-1 and Federal Rule of Civil Procedure 15.  Should she wish to do so, Owen may file such a motion within 14 days.  If no motion is filed, the court will enter judgment, and the case will be closed.

---

[112] Dkt. 21.

[113] *Minute Entry*; *see also Plaintiff's Standing Brief* at 9; Dkt. 29, *Memorandum in Opposition Defendant Defendants' [sic] Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim Upon Which Relief May be Granted* at 8.

SO ORDERED this 31st day of March, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge