IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REBECCA OWEN,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF UTAH LEGISLATIVE SERVICES, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING LEAVE TO AMEND**<br><br>2:25-cv-00485-RJS-CMR<br><br>District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Cecilia M. Romero |

This case arises out of Defendant State of Utah Legislative Services (LS) terminating Plaintiff Rebecca Owen's employment. Before the court is Owen's Motion to Amend the Complaint.[1] For the reasons explained below, the Motion is denied.

**FACTUAL BACKGROUND**[2]

From early 2020 to December 2023, Owen worked as a Senior Human Resources Generalist for LS.[3] Her direct supervisor was the Legislative Services Administrator Defendant Debbie Cragun.[4] Throughout her employment, Owen received uniformly positive feedback regarding her job performance, professional effectiveness, and expertise.[5]

---

[1] Dkt. 44, *Motion to Amend Complaint* (*Motion*).

[2] The following facts are drawn from the Proposed Complaint. Dkt. 44-1, *Proposed Amended Complaint* (*Proposed Complaint*).

[3] *Id.* ¶¶ 4, 48, 81.

[4] *Id.* ¶¶ 7, 50.

[5] *Id.* ¶ 49.

1

Owen has attention deficit hyperactivity disorder (ADHD).[6]  In 2022 and 2023, there was a national shortage of her ADHD medications, and Owen was unable to fill her prescription.[7] Owen disclosed to the human resources team (HR) she was struggling due to her inability to obtain the needed medication.[8]  Around this time, Cragun began treating Owen differently.[9]

In May 2022, Cragun scheduled a meeting with Owen to discuss her job performance.[10] The majority of the feedback was positive, although Cragun also relayed some complaints wholly based on personal traits related to Owen's disability.[11]  The complaints were unrelated to the quality and comprehensiveness of Owen's work.[12]

Over the next 12 months, Cragun sought out opportunities to criticize Owen for traits related to her disability, such as time management, general organizational skills, attention to minute detail, and brevity in oral and written communication.[13]  Cragun's private criticism was accusatory, overly critical, and aggressive.[14]  And when Cragun criticized Owen in front of her coworkers, it was delivered as a joke at Owen's expense.[15]

During Owen's job performance meeting in May 2023, Cragun raised many of the same complaints that were discussed during the May 2022 meeting.[16]  Owen told Cragun directly of

---

[6] *Id.* ¶¶ 1, 57.

[7] *Id.* ¶ 56.

[8] *Id.*

[9] *Id.* ¶ 52.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* ¶ 54.

[14] *Id.*

[15] *Id.*

[16] *Id.* ¶ 57.

her ADHD diagnosis and her inability to take her prescribed medication due to the national shortage.[17]  Cragun was unmoved and appeared to consider this information irrelevant.[18]

In the summer of 2023, Owen explored the possibility of submitting a formal reasonable accommodation request.[19]  But she ultimately decided not to.[20]  From July 2023 to December 15, 2023, Cragun systemically removed Owen's job responsibilities and reassigned them to unqualified, untrained, junior staff.[21]

On November 13, 2023, another LS manager (DF) notified Owen that one of DF's subordinates (JM) had submitted a reasonable accommodation request.[22]  Over the next ten days, Owen conducted a reasonable accommodation process with JM.[23]  Owen proposed a 6-week trial accommodation.[24]  JM was relieved and grateful.[25]

On December 1, 2023, Owen requested a meeting with DF to discuss JM's accommodation.[26]  DF declined the meeting and informed Owen he was frustrated that she had discussed the accommodation with JM prior to receiving DF's approval.[27]

---

[17] *Id.*

[18] *Id.*

[19] *Id.* ¶¶ 64–69.

[20] *Id.* ¶ 69.

[21] *Id.* ¶ 70.

[22] *Id.* ¶ 71.

[23] *Id.* ¶¶ 71–74.

[24] *Id.*  ¶ 74.

[25] *Id.*

[26] *Id.* ¶ 75.

[27] *Id.*

On December 4, 2023, Owen attended a meeting with Cragun and Defendant Lee Killian to discuss the sequence of events related to JM's request.[28] Owen detailed the steps she had taken, and Cragun and Killian did not express any disagreement or concern.[29] Later that day, Cragun, Killian, and Owen met with DF.[30] DF vehemently opposed giving JM any accommodation, and, to Owen's surprise, Cragun and Killian agreed.[31] Owen was told to contact JM and withdraw the proposed trial accommodation.[32]

On December 14, 2023, Owen received a request from Cragun to meet with HR the next morning.[33] Cragun also invited Killian; Defendant John Q. Cannon, the Director of the Office of Legislative Research & General Counsel (OLRGC); and Defendant Victoria Ashby, the Legislative General Counsel of OLRGC, to attend.[34] Based on the invitation list, Owen concluded the meeting was to terminate her employment.[35] Owen responded that she assumed the purpose was to terminate her employment and asked for a time to return property to LS and retrieve her belongings from the office.[36]

On December 16, 2023, Cragun confirmed the termination was for cause and effective December 15, 2023.[37]

---

[28] *Id.* ¶ 76. Killian is and was the Managing Staff Attorney for the Office of Legislative Research & General Counsel. *Id.* ¶ 8.

[29] *Id.*

[30] *Id.* ¶ 77.

[31] *Id.*

[32] *Id.*

[33] *Id.* ¶ 78.

[34] *Id.* ¶¶ 8–10, 78.

[35] *Id.* ¶ 78.

[36] *Id.* ¶ 80.

[37] *Id.* ¶ 81.

## PROCEDURAL HISTORY

On June 18, 2025, after receiving a right to sue letter from the Equal Employment Opportunity Commission, Owen filed the Complaint against LS, the Legislative Staff Management Council (LSMC), and four individuals: Cragun, Killian, Cannon, and Ashby (collectively, the Individual Defendants).[38]  Defendants moved to dismiss.[39]  On March 31, 2026, after the benefit of oral argument and supplemental briefing,[40] the court granted the motion and dismissed with prejudice the ADA and ADEA claims against LS, LSMC, and the Individual Defendants sued in their individual capacity.[41]  The court dismissed without prejudice the ADA and ADEA claims against the Individual Defendants sued in their official capacity and the Utah state law claims against all Defendants.[42]

On April 13, 2026, Owen sought leave to amend.[43]  The Proposed Complaint brings twelve causes of action against the LSMC, Cragun, Killian, Cannon, Ashby, and Does 1–10.[44] On April 24, 2026, Defendants filed a brief opposing amendment as futile.[45]  On May 27, 2026,

---

[38] *Complaint*; Dkt. 1-1, *Determination and Notice of Rights*.

[39] *See* Dkt. 21, *Motion to Dismiss*.

[40] *See* Dkt. 40, *Minute Entry*; Dkt. 35, *Plaintiff's Supplemental Briefing*; Dkt. 36, *Defendants' Reply and Memorandum in Support of Motion to Dismiss*; Dkt. 41, *Defendants' Supplemental Briefing in Support of Motion to Dismiss*; Dkt. 42, *Plaintiff's Supplemental Briefing in Opposition to Defendants' Motion to Dismiss*.

[41] Dkt. 43, *Memorandum Decision and Order Granting Motion to Dismiss* (*Order*) at 16.

[42] *Id.*

[43] *Motion*; *see also Proposed Complaint*.

[44] *Proposed Complaint* at 1, ¶¶ 92–219.

[45] Dkt. 48, *Defendants' Response and Memorandum in Opposition to Plaintiff's Motion to Amend Complaint* (*Opposition*) at 1–2.

Owen filed a Reply, and Defendants subsequently filed a motion to strike the Reply as untimely.[46]  The Motion is ripe for review.

## LEGAL STANDARD

"The court should freely give leave [to amend] when justice so requires."[47]  Whether to grant a party's request to amend the pleadings "is within the discretion of the trial court."[48]  The purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."[49]  The Supreme Court has explained that parties "ought to be afforded an opportunity to test [their] claim on the merits," unless the nonmoving party can demonstrate "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment[.]"[50]

Defendants argue amendment is futile.[51]  "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[52]  A complaint is subject to dismissal under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."[53]  A

---

[46] Dkt. 49, *Plaintiff's Reply in Support of Motion for Leave to Amend Complaint* (*Reply*); Dkt. 50, *Defendants' Motion to Strike Plaintiff's Reply in Support of Motion to Amend as Untimely*; *see also* Dkt. 51, *Plaintiff's Memorandum in Opposition to Defendant's Motion to Strike Plaintiff's Reply in Support of Motion for Leave to Amend Complaint*; Dkt. 52, *Defendants' Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Strle Plaintiff's Reply in Support of Motion to Amend as Untimely*.  Local rules permit a movant to file a reply "within 14 days after service of the response." DUCivR 7-1.  Owen filed her Reply 33 days after the response. *See Reply*.  The Motion to Strike is denied.  Parties are reminded that it is essential to meet timelines set out in the Federal and Local Rules.  Even so, the court will exercise its discretion and consider the untimely Reply.  *See Jackson v. Park Place Condominiums Ass'n, Inc.*, 619 Fed. App'x 699, 705 (10th Cir. 2015) ("[D]istrict courts are entitled to a great deal of discretion in deciding whether to consider untimely motions.").

[47] Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

[48] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quotation marks and citation omitted).

[49] *Id.* (internal quotation marks and citation omitted).

[50] *Foman*, 371 U.S. at 182.

[51] *See Opposition*.

[52] *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004) (quotation marks and citation omitted).

[53] Fed. R. Civ. P. 12(b)(6).

6

complaint is not subject to dismissal when it "states a claim to relief that is plausible on its face,"

that is, when a plaintiff "pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[54]  "But specific facts are

unnecessary; the claimant needs only to provide fair notice of the claim and its grounds."[55]  The

court accepts all "well-pled factual allegations" as true and views "them in the light most

favorable" to the claimant.[56]

**ANALYSIS**

The Proposed Complaint asserts twelve causes of action.[57]  Defendants argue amendment

is futile.[58]  The court considers each cause of action in turn.

### I.    First Cause of Action

The first cause of action alleges a violation of Title I of the ADA.[59]   The court considers

the arguments as to LSMC and as to the Individual Defendants in turn.

*A.  ADA Claim Against LSMC*

The First Cause of Action alleges LSMC violated Title I of the ADA.[60]  Defendants

argue claim preclusion renders this claim futile.[61]  Owen does not argue otherwise.[62]  The court

agrees.

---

[54] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).

[55] *Beus Gilbert PLLC v. Donald L. Robertson Trust*, 859 F. App'x 234, 237 (10th Cir. 2021) (citation modified).

[56] *Id.* (citation modified) (quoting *Evans v. Diamond*, 957 F.3d 1098, 1100 (10th Cir. 2020)).

[57] *Proposed Complaint* ¶¶ 92–219.

[58] *See Opposition* at 3–20.

[59] *Proposed Complaint* ¶¶ 92–119.

[60] *Id.*

[61] *Opposition* at 3.

[62] *Reply* at 2–5.

"The doctrine of claim preclusion, also known as res judicata, 'prevents a party from relitigating a legal claim that was or could have been the subject of a previously issued final judgment.'"[63]  A "party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."[64]  Claim preclusion applies when "there was (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits."[65]

Defendants establish all three elements here.  The first element is established because the court dismissed with prejudice Owen's previous ADA claim against LSMC.[66]  A dismissal with prejudice "constitutes a final adjudication on the merits with preclusive effect in federal court."[67]  The second and third elements are also established because the parties and cause of action are identical: the Order dismissed Owen's ADA claim against LSMC, and now Owen again brings an ADA claim against LSMC.[68]  Claim preclusion necessarily applies and amendment to add this cause of action against LSMC is futile.

### B.  ADA Claim Against Individual Defendants

The First Cause of Action alleges the Individual Defendants violated Owen's rights under Title I of the ADA.[69]  Defendants argue this claim is futile for failing to allege facts establishing

---

[63] *Markley v. U.S. Bank Nat'l Ass'n*, 142 F.4th 732, 736 (10th Cir. 2025) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)); *see also id.* at 737 ("Put simply, claim preclusion prevents the 'would've, could've, should've' in litigation.  Parties must bring all claims stemming from the same operative facts in one lawsuit, or forever hold their peace.  At bottom, you only get one bite at the apple.").

[64] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006).

[65] *Markley*, 142 F.4th at 737 (citation modified).

[66] *Order* at 16.

[67] *Ostler v. Anderson*, 200 F. App'x 750, 753 (10th Cir. 2006).

[68] *Compare Order* at 16, *with Proposed Complaint* ¶¶ 92–119.

[69] *Proposed Complaint* ¶¶ 92–119.

(1) exhaustion, (2) Defendants were her employer, and (3) standing.[70]  Because standing is jurisdictional, the court begins there.

"Standing is an essential and unchanging part of the case-or-controversy requirement of Article III of the Constitution."[71]  The court lacks jurisdiction if the plaintiff lacks standing.[72] "At the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing."[73]  To have standing, a plaintiff must have (1) suffered an injury-in-fact that (2) the defendant caused and (3) is redressable by a favorable decision.[74]  As this court previously held, the Eleventh Amendment bars Owens from seeking monetary or declaratory relief that a plaintiff's federal rights were violated in the past.[75]  She may only seek prospective relief.  When the plaintiff seeks prospective relief, the injury-in-fact element is satisfied by showing the plaintiff is either suffering "a continuing injury" or is "under a real and immediate threat of being injured in the future."[76]  A threatened injury must be "certainly impending and not merely speculative."[77]  "Conjectural or hypothetical injuries, or non-impending future injuries are insufficient."[78]  Evidence of past wrongs may bear on whether a real and immediate threat of repeated injury exists but does not alone confer standing to pursue prospective relief.[79]

---

[70] *Opposition* at 4–8.

[71] *K.A. v. Barnes*, 134 F.4th 1067, 1075 (10th Cir. 2025) (citation modified).

[72] *United States v. Colo. Supreme Court*, 87 F.3d 1161, 1166 (10th Cir. 1996).

[73] *Doe v. Hunter*, 796 F. App'x 532, 535 (10th Cir. 2019) (citation modified); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining the party invoking federal jurisdiction bears the burden of establishing standing).

[74] *Lujan*, 504 U.S. at 560–61.

[75] *Minute Entry* (oral order); *see also Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019).

[76] *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

[77] *Id.* (internal quotation marks and citation omitted).

[78] *Young v. Colo. Dep't of Corr.*, 94 F.4th 1242, 1255 (10th Cir. 2024).

[79] *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007).

The Complaint does not allege an impending future injury.  In her Reply, Owen argues the following allegation satisfies standing:

> The Plaintiff can show that there is a sufficient likelihood that she will be affected by the allegedly unlawful conduct in the future. She possesses knowledge, skills, and experience that is not generally applicable to other fields of employment. As a result, she could reapply for work with the State of Utah and/or the LSMC and face additional acts of discrimination on the basis of her disability.  Plaintiff alleges that the named Defendants would impede her future ability to work for the State of Utah Legislative Services and/or the Utah Legislature since they may discriminate or retaliate against her in the future because they discriminated against her and retaliated against her in the past.[80]

But this allegation does not include the requisite specific, continuing injury.  Any future injury is conjectural: Owen *could* reapply, Defendants *would* impede her *future* ability to work, and Defendants *may* discriminate or retaliate against her *in the future*.  These allegations are too speculative to confer standing for prospective relief.  The most concrete allegation is that Defendants discriminated against and retaliated against her previously.  But past wrongs alone do not confer standing.[81]  Accordingly, the court concludes Owen lacks standing.  The ADA claim against the Individual Defendants is futile.

## II.     Second, Third, Fourth, and Fifth Causes of Action

The second, third, fourth, and fifth causes of action allege violations of Title II of the ADA.[82]  But, in *Elwell v. Oklahoma*,[83] the Tenth Circuit clearly held, "Title II does not contain an independent cause of action for employment discrimination."[84]  These causes of action allege

---

[80] *Proposed Complaint* ¶ 114; *see also Reply* at 4–5.

[81] *Mink*, 482 F.3d at 1253.

[82] *Proposed Complaint* ¶¶ 120–51.

[83] 693 F.3d 1303 (10th Cir. 2012).

[84] *Id.* at 1316.

violations of Title II related to Owen's employment by Defendants.  Indeed, the only adverse action was employment termination.  Therefore, the second, third, fourth, and fifth causes of action fail to state a claim upon which relief can be granted and are futile.

### III.     Sixth Cause of Action

The sixth cause of action alleges violations of Section 504 of the Rehabilitation Act.[85] The Rehabilitation Act provides, "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the" ADA.[86]  As the Tenth Circuit has explained, "decisions under both acts apply interchangeably to [a court's] analysis."[87]  Defendants argue this claim is futile for two reasons: (1) the Defendants are not Plaintiff's employer; and (2) Owen failed to exhaust her administrative remedies.  The court agrees Defendants are not Owen's employer and does not reach the second argument.

A plaintiff may recover under the Rehabilitation Act "by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly."[88]  "[I]ndividual capacity suits are inappropriate."[89]  "An individual qualifies as an 'employer' under [the Act] solely for purposes of imputing liability to the true employer if he or

---

[85] *Proposed Complaint* ¶¶ 152–68.

[86] 29 U.S.C. § 794(d).

[87] *Vidacak v. Potter*, 81 F. App'x 721, 723 (10th Cir. 2003) (unpublished).

[88] *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993); *Butler v. City of Prairie Vill.*, 172 F.3d 736, 744 (10th Cir. 1999) (extending *Sauers* to Title I of the ADA); *see also Moore v. Cooksey*, 242 F.3d 389, at *1 (10th Cir. 2000) (unpublished table decision) (affirming lower court finding persons in their individual capacity are not subject to personal liability under the Rehabilitation Act).

[89] *Sauers*, 1 F.3d at 1125.

11

she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment."[90]

The parties agree Defendants were not Owen's actual employer.[91] The issue then is whether the Defendants were her supervisors. Owen argues the following allegations satisfy this requirement:

> Defendants Cragun, Killian, Cannon, Ashby, and the Legislative Services Management Council worked in their capacity as supervisory employees working as agents of the State of Utah Legislative Services because they had a supervisory capacity over the Plaintiff. The Defendants had the ability to hire and fire employees, assign tasks to the Plaintiff, and supervise her work. They also dictated the hours she worked, what clothes were appropriate for work, as well as provided her with all office supplies and equipment to do her job. While it is technically true that none of the four officials named as Defendants nor the Legislative Services Management Council were Plaintiff's actual employer, the facts indicate that there was a master-servant relationship between the Defendants and the Plaintiff in which the Defendants exerted control over Plaintiff's employment.[92]

These allegations are impermissible group pleadings that fail to give Defendants fair notice of the grounds for the claims made against each of the individual defendants. "Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for

---

[90] *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (citation modified) (quoting *Sauers*, 1 F.3d at 1125).

[91] *Opposition* at 6–7, 16; *Proposed Complaint* ¶ 12 ("[N]one of the four officials named as Defendants nor the [LSMC] were Plaintiff's actual employer[.]"); *id.* ¶ 96. The Individual Defendants are sued in their official capacity. *Id.* at 1.

[92] *Reply* at 2–7; *Proposed Complaint* ¶¶ 11–12; *see also id.* ¶ 96 ("While it is technically true that neither of the four individually named Defendants nor the nor the Legislative Services Management Council were her actual employer, the facts indicate that there was a master-servant relationship between the Defendants and the Plaintiff in which the Defendants exerted control over the Plaintiff. The Defendants Cragun, Killian, Cannon, Ashby, and the Legislative Services Management Council had a supervisory capacity over the Plaintiff and had the ability to hire and fire employees, could and did assign tasks to the Plaintiff and supervise her work. They also dictated the hours she worked, what clothes were appropriate for work, as well as provided her with all office supplies and equipment to do her job.").

any of these individuals to ascertain what particular [impermissible] acts they are alleged to have committed."[93]  A secondary result of the impermissible group pleading is failing to allege sufficient facts to establish any defendant is Owen's supervisor.  To survive dismissal, the complaint must allege the individual qualifies as a supervisor, specifically that the individual "serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing, or conditions of employment."[94]  The court is unable to make an individualized determination for any of the defendants because the complaint fails to allege the individual defendant's position as to Owen or the specific control that defendant exercised over Owen's hiring, firing, or conditions of employment.  As alleged, the cause of action fails to state a claim for relief under Rule 12.  Accordingly, this cause of action is futile against all Defendants.[95]

## IV.    Seventh Cause of Action

The seventh cause of action asserts an Age Discrimination in Employment Act (ADEA) claim against all Defendants.  The court considers the arguments as to each Defendant in turn.

### A.  ADEA Claim Against LSMC

The court previously dismissed the ADEA claim against LSMC with prejudice.[96]  Claim preclusion applies.[97]  The Order was a final adjudication on the merits that resolved this cause of action between these same Defendants: the Order dismissed Owens' ADEA claim against LSMC with prejudice and Owen again brings an ADEA claim against LSMC.[98]  Accordingly, this cause of action against LSMC is futile.

---

[93] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[94] *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) (citation modified) (quoting *Sauers*, 1 F.3d at 1125).

[95] *See Bradley*, 379 F.3d at 901; Fed. R. Civ. P. 12(b)(6).

[96] *Order* at 16.

[97] *See supra* Section I.A (laying out legal standard for claim preclusion).

[98] *Compare Order* at 16, *with Proposed Complaint* ¶¶ 169–83.

### B. ADEA Claim Against Individual Defendants

As with the Rehabilitation Act claim, the ADEA claim requires Owen to allege the Individual Employees are her supervisors.[99] The court already concluded Owen has failed to so allege.[100] Accordingly, for the same reasons explained above, this cause of action is futile against the Individual Defendants.

## V.   Eighth Cause of Action

The eighth cause of action brings a 42 U.S.C. § 1983 claim, asserting Defendants violated Owen's right to procedural due process under the Fourteenth Amendment.[101]

Section 1983 provides a civil action for deprivation of rights against "person[s]" who act under color of law.[102] "States, state officials sued in their official capacities, and governmental entities that are considered 'arms of the state' are not 'persons' within the meaning of 42 U.S.C. § 1983."[103] This court has already found LSMC is an arm of the state,[104] and the Individual Defendants are sued in their official capacities.[105] In Reply, Owen argues the § 1983 claim succeeds against the Individual Defendants for prospective injunctive relief under *Ex parte*

---

[99] *Sauers*, 1 F.3d at 1125; *see also Oldridge v. City of Wichita*, No. 22-3104, 2023 WL 3965839, at *4 n.5 (10th Cir. July 13, 2023) (explaining the court may substantively on Title VII cases when deciding ADEA cases).

[100] *See supra* Section III.

[101] *Proposed Complaint* ¶¶ 184–89.

[102] 42 U.S.C. § 1983.

[103] *Dodge v. Shoemaker*, 695 F. Supp. 2d 1127, 1134 (D. Colo. 2010) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

[104] *Order* at 8–14.

[105] *Proposed Complaint* at 1; *see also Reply* at 3.

*Young.*[106]  But, as explained above,[107] Owen lacks standing to seek prospective relief. Accordingly, this cause of action is also futile.

### VI.     Ninth, Tenth, Eleventh, and Twelve Causes of Action Under Utah Law

Owen's ninth, tenth, eleventh, and twelfth causes of action arise under Utah Law.[108]  The court lacks original jurisdiction over these state law claims as the claims do not involve a federal question and diversity of citizenship does not exist between the parties.[109]  The court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[110]  "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[111]  Here, the court concludes every claim arising under its original jurisdiction is futile.  Accordingly, the court declines to exercise jurisdiction over the remaining state claims.[112]

### CONCLUSION

---

[106] *Reply* at 8.

[107] *See supra* Section I.B.

[108] *Proposed Complaint* ¶¶ 190–94 (Utah constitutional claim); *id.* ¶¶ 195–204 (breach of contract claim); *id.* ¶¶ 205–212 (breach of implied contract claim); *id.* ¶¶ 213–19 (breach of implied covenant of good faith and fair dealing claim).

[109] *See* 28 U.S.C. § 1331 (federal question jurisdiction); *id.* § 1332 (diversity of citizenship jurisdiction).

[110] 28 U.S.C. § 1367.

[111] *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting 28 U.S.C. § 1367(c)).

[112] The court notes the Proposed Complaint includes unknown, unnamed defendants in its caption but fails to include any other allegations as to these Doe Defendants.  *See Proposed Complaint*.  The parties' briefs also do not mention the Doe defendants.  The court concludes any claims against the Doe Defendants are also futile.

For the reasons explained above, the Motion to Strike is DENIED.[113]  The Motion for

Leave to Amend is also DENIED.[114]  The Clerk of Court is directed to close the case.

SO ORDERED this 8th day of July, 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[113] Dkt. 50.

[114] Dkt. 44.

16